Commonwealth v. Call.

## COMMONWEALTH *versus* FRANCIS CALL.

An indictment under Revised Stat. *c.* 126, § 32, for obtaining money by false pretences, averring that the pretences were practised upon one person and his money obtained, with intent to defraud another, was *held* to be a good indictment.

Where the indictment averred that the defendant, by false pretences, obtained "the proper money of P, due, owing and payable to W and S, with intent to defraud *them* of the same," it was *held,* that the word *them* must be referred to that antecedent (namely, W and S, and not P, W and S,) to which the tenor of the indictment and the principles of law required that it should relate, whether exactly according to the rules of syntax or not.

Upon the trial of an indictment, alleging that the defendant obtained money from P by false pretences, with intent to defraud W and S, and that the money was the property of P, the proof was, that the defendant, who had once been authorized by W and S to collect bills for them, but whose authority had been revoked, presented a bill to P, and received payment, and receipted the bill in the name of W and S, whereby P was discharged, no notice having been given of the revocation of the defendant's authority, and appropriated the money to his own use. It was *held,* that the allegations were sustained by the proof.

It was *held* also, that if the defendant as a sub-agent, collected the money due from P to W and S under a fraudulent agreement with the agent to divide the money, or with the knowledge and belief that it was the intention of the agent to squander the money and not account for it and pay it over to his employers, this was evidence of an intent on the part of the defendant to defraud W and S.

Confessions of an accomplice, made in the presence of the defendant and assented to by him, are admissible in evidence against him.

Although evidence of one offence is not admissible for the purpose of proving the charge of another, yet it may be so connected with the proof of a relevant and material fact, that its introduction cannot be avoided.

Upon an indictment for obtaining money of P by false pretences, the proof was that the false representation was made to P's agent, who communicated it to P, and thereupon, by P's direction, paid the money to the defendant out of P's funds. It was *held* that this was not a variance.

THE defendant was indicted under Revised Stat. *c.* 126, § 32, for obtaining money on false pretences.   The indictment alleges, that the defendant, on the 5th of February, 1838, with

intent to cheat and defraud Artemas White and Gilman Sar
gent of their money, did unlawfully, knowingly and designedly,
falsely pretend and represent to Charles A. Parker, a person
who owed a sum to White and Sargent, to wit, the sum of
$ 11·63, that he, the defendant, was an authorized collector
and a servant of White and Sargent, that they had sent him to
collect and receive the sum of money so due and owed by
Parker to them, and that Parker, believing the false pretences
so made and being deceived thereby, was induced by reason
of them to deliver and did deliver to the defendant the sum of
$ 11·63 due and owing from him, Parker, to White and Sar-
gent, of the proper money and effects of Parker due and owing
to White and Sargent, and the defendant did receive and obtain
the same by means of the false pretences and representations,
and with the intent to cheat and defraud Parker and White and
Sargent of the same money and effects ; whereas, in fact, the
defendant was not an authorized collector and a servant of White
and Sargent, and White and Sargent had not employed and sent
him, and did not then and there employ and send him, to col-
lect and receive for them the sum so due from Parker to them,
but had forbidden the defendant to collect and receive any for
them and had turned him out of their employment ; and so the
jurors say, that the defendant, by means of the false pretences,
unlawfully, knowingly and designedly did receive and obtain
from Parker the sum of $ 11·63, " being the said money due
and owing as aforesaid and effects of the proper money and
effects of the said Parker, due, owing and payable to said
White and Sargent, with intent to defraud them of the same."

The defendant was tried before *Shaw* C. J.  After a verdict
against him, he moved in arrest of judgment, 1. because the
allegation in the indictment, that the money of Parker was
obtained by the defendant with intent to defraud White and
Sargent, is repugnant and absurd ; for White and Sargent could
not be defrauded by the defendant's obtaining the property of
Parker ; and if the debt due to White and Sargent was can
celled by paying the money to the defendant, then it was White
and Sargent's money which was obtained.

2. Because the relative pronoun *them*, in the conclusion of
the indictment, refers with equal uncertainty to two antecodents,

namely, to White and Sargent, and to Parker, White and Sargent.

3. Because the facts charged in the indictment do not amount to an indictable offence, within the intent and meaning of the statute.

The defendant also moved for a new trial, on several grounds.

The general tenor of the evidence was, that in the beginning of January, 1838, the defendant was employed by White and Sargent to collect bills for them. They carried on the business of smiths and farriers, jointly, but in the name of Artemas White. Some bills were delivered out by White, preparatory to collecting them, and among the rest, one against Parker for $11·63. White and Sargent had grounds to withdraw their confidence in the defendant, and in the latter part of January they revoked his authority to collect any bills for them, and took up what bills remained in his hands, but no public notice of such revocation was given, by advertisement or otherwise, to their customers. Afterward, on or about the 5th of February, the defendant called at Parker's office, and there the amount of the bill was paid to him by R. Cole, a clerk in the office, out of Parker's money and by Parker's direction, and thereupon the defendant receipted the bill, signing his own name "for Artemas White." The money never came to the hands of White and Sargent or either of them.

1. The first ground of the motion for a new trial was, because the jury found that the money obtained by the defendant was the money of Parker, whereas the evidence was that it was the money of White and Sargent, and the jury were so instructed ; wherefore the verdict was against evidence.

On this point the jury were instructed, that if the money was paid out of Parker's funds, by his direction, to one not authorized by White and Sargent to receive it, it was Parker's money, and the evidence was such as to warrant the jury in finding the averment proved.

2. Because the judge permitted hearsay evidence to be given at the trial, namely, the testimony of Gilman Sargent.

This testimony was as to facts stated by the witness's son, Rufus Sargent, in presence of the defendant, in reference to

their joint acts and intentions, and assented to by the defendant. There was evidence showing that after the authority of White and Sargent to the defendant had been revoked, Rufus Sargent had been employed to collect their bills ; that at his request the defendant collected the bill in question ; and that at some time after Rufus Sargent was thus employed, a fraudulent agreement was entered into between him and the defendant, to collect the bills and divide the money and go off to New York.    After secreting themselves for some time, they were found and brought together in presence of White and the elder Sargent, and the declarations objected to under this head were the statements made by Rufus Sargent to his father and to White, in presence of the defendant, and assented to by him, as to their acts and intentions in relation to collecting and dividing the money due to White and Sargent, including the sum due from Parker.    The testimony was deemed competent, as being the admission of the defendant.

3. Because the jury found that the defendant collected the money with intent to cheat and defraud White and Sargent, against evidence ; the evidence being, that the money was collected in good faith, and immediately paid over to an individual authorized to receive it.

The jury were instructed, that if the defendant collected the money at the request of Rufus Sargent, and paid it over to him under a belief and expectation that he would account for it and pay it over to his employers, it would rebut the charge of collecting it with an intent to defraud White and Sargent ; but if he collected and paid it to Rufus Sargent under a fraudulent agreement to divide the money, or with the knowledge and belief that it was the intention of Rufus Sargent to squander the money and not account for it and pay it over to his employers, it was evidence of fraudulent intent.    And the jury, in finding against the defendant upon this point, found that the money was not collected in good faith and immediately paid over to one authorized to receive it, and the evidence was sufficient to warrant such finding.

4. Because the judge permitted evidence to go to the jury, irrelevant to the issue and tending to prejudice their minds against the defendant, notwithstanding the same was objected

to by the defendant's counsel, viz. the testimony of White and Sargent relative to the loss of a sum of money by the defendant at a house of ill fame, long before the act complained of in the indictment, which testimony was offered to show why the defendant was dismissed from the service of White and Sargent, whereas the fact of the dismission, and not the cause of it, was the point in issue.

The testimony alluded to in this part of the defendant's motion, was his declaration to White or Sargent as to the manner in which he stated that he had lost some money of theirs, immediately preceding and connected with their revocation of his authority, and notice to him of that revocation. It was supposed to be material as bearing upon the revocation, the time when it took place, and the notice of it to the defendant.

5. Because the jury found that the defendant made false pretences to, and obtained the money of Parker, as specified in the indictment, whereas the evidence was that all the pretences which were made were made to R. Cole, and the money obtained of Cole.

The jury were instructed, that if the defendant made a false representation, that he was authorized by White and Sargent, and this representation was made to Cole, as the agent of Parker, and Parker thereupon directed Cole to pay the bill, this was in legal effect a false representation to Parker, from whom the money was to come, and was sufficient to support the averment of a false representation to Parker.

*Gleason,* for the defendant, cited in support of the first ground of the motion in arrest, *Rex* v. *Lara*, 2 Leach, 739 ; in support of the second, 1 Chit. Crim. Law, 171, 172.

The allegation in the indictment is, that the false pretences were made to Parker ; the evidence is, that they were made to Cole. This is a fatal variance. It would have been proper to allege that the pretences were made to Cole as the agent of Parker. 1 Chit. Crim. Law, 171, 172, 173, 228 ; 3 Chit. Crim. Law, 999, 1007, 1009 ; *Regina v. Jones*, 1 Salk, 379 ; 2 M'Nally on Evid. 502 ; 2 East's P. C. 837

*Austin,* Attorney-General, for the Commonwealth.

MORTON J. delivered the opinion of the Court. This indictment is founded on the Revised Stat. c. 126, § 32, which

*March 8th.*

*March 18th.*

provides, that if any person shall designedly, by any false pre-
tence, and with intent to defraud, obtain from any other person,
any money, goods, wares, merchandise, or other property, he
shall be punished, &c.

The indictment clearly brings the offence within the inter-
diction of the statute, and indeed, uses all the substantive
words of the statute itself. It alleges that the defendant,
" *designedly,*" " *with an intent to defraud,*" " *by false pre-
tences,*" (fully setting them forth,) did " *obtain,*" certain
" *money.*" These, with other necessary allegations, to show
who was intended to be, and actually was defrauded, who was
intended to be and actually was deceived, and whose was the
money obtained, most certainly contain every averment which
can be needed " fully and plainly, substantially and formally,"
to describe the offence of which the defendants stand indicted.

The objection to the indictment is, that it alleges an intent
to defraud one person, and that false pretences were practised
upon another ; that one man was deceived, and *his* money ob-
tained, and another defrauded. The facts reported clearly
show, that these allegations are the only ones, which would
meet the proof, and that if this indictment cannot be sustained,
a gross fraud may be practised within the words of the statute,
and yet not be liable to punishment under it. A combination
of facts has here occurred, and may occur again, where a de-
ception has been practised upon one person, and *his* property
obtained, and the loss has fallen upon another, the intention
being to defraud him. This is clearly within the mischief in-
tended to be guarded against, and, we have no doubt, within
the effective prohibition of the statute.

This indictment would manifestly be bad at common law,
because the obtaining property by false pretences is not an
offence punishable at common law. But had false tokens, one
of the means of deception mentioned in this statute, been used,
it is contended that the indictment would still be defective by
the rules of the common law, because the allegation, that one
was deceived, and another defrauded, is repugnant, absurd, and
suicidal. And the case of *The King* v. *Lara*, 2 Leach,
739, is relied upon as deciding this point. That case, which
certainly seems to be directly in point, was an Old Bailey trial.

in which, according to the report, the decision appears to have been made by the jury, rather than the bench. At most it was a hasty ruling, during a criminal trial, in a tribunal more remarkable for its promptitude than its deliberation in such trials ; it never received a revision and is not entitled to much respect.

But without stopping to inquire whether such an indictment would be good at common law or not, we are all satisfied that this is a good indictment under the statute.

The grammatical and critical objections, however ingenious and acute they may be, cannot prevail. The age has gone by when bad Latin or even bad English, so it be sufficiently intelligible, can avail against an indictment, declaration, or plea. The passage objected to may be somewhat obscure, but by a reference to the context is capable of pretty certain interpretation. The pronoun " *them* " must be referred to that antecedent, to which the tenor of the instrument and the principles of law require that it should relate ; whether exactly according to the rules of syntax or not.

The motion in arrest must be overruled.

Many exceptions were taken to the rulings of the Chief Justice, who presided at the trial ; which, though too plain to admit of much doubt, will be considered in their order.

1. The indictment alleges that the money was obtained from, and was the property of Charles A. Parker. This allegation, involving a mixed question of law and fact, was sustained by the verdict of the jury, according to the instructions of the Court ; and we have no doubt, properly sustained in both respects. Before the payment of the account, the money was undeniably Parker's. By the payment, although the bill was receipted and legally discharged, yet it did not vest in White and Sargent ; because the person receiving it had no authority from them, and could not act as their agent. The fact that the money was in the possession of and actually paid over by Parker's *agent*, does not, in the slightest degree, alter the case. It was done by Parker's direction, and is, in effect, the same as if paid by his own hand.

2. Although the confessions of an accomplice, as such, are

not competent evidence ; (1 Phil. Evid. 87 ; Kelyng. 18 ; Gilb. Evid. 124 ;) yet when made in the presence of the defendant and assented to by him, there can be no doubt of their admissibility. Indeed had his express assent been wanting, they would have been admissible. Where declarations against a party are made in his presence and not objected to by him, he being at liberty to do so, his assent is implied, and they are always deemed competent evidence.

3. The facts sufficiently support the allegation of an intention to defraud White and Sargent. The defendant, having been their authorized and publicly acknowledged agent for the collection of their bills, and no notice having been given of the revocation of his authority, might lawfully bind them in the receipt of payment and the discharge of such bills as he had in his possession. When, therefore, the defendant presented Parker's account to him, and he paid it and took a receipt from the defendant, as the agent of White and Sargent, it was a valid discharge and would bar any further claim by them. If they did not receive the money, the loss must fall on them, and they were defrauded of the amount of their account. And every man must be presumed to intend the legal consequences of his acts. If the defendant received the bills of Rufus Sargent, who had the possession of them, with authority to collect them, and obtained the money at his request, either under a fraudulent agreement to divide it between them or with a knowledge that R. Sargent intended to squander it, or with an intent to convert it to his own use, it was equally a fraud upon White and Sargent, and evinced an intention to defraud them. The jury have so found the facts, and the law was unquestionably correctly laid down.

4. Evidence of the declarations of the defendant in relation to his loss of a sum of money, was not admissible in proof of any collateral or independent facts. Proof of any one crime cannot be introduced to support the charge of another. It was not offered for this purpose. But in proving a revocation of his authority and notice of that revocation, and the time and manner in which it took place, the defendant's declarations became admissible and important, and all the connected parts of the conversation were necessarily introduced

Common-
wealth
v.
Call.

If, in this way, evidence of other misconduct of the defendant got into the case, it was merely collateral and incidental and could not be avoided. He ought not to be injuriously affected by it ; and there is no complaint that due caution was not used to protect him from any prejudice from it. At the worst, if it be supposed to have had an unfavorable influence, it was his misfortune, which must be submitted to, like any other unavoidable accident.

5. A false representation, made to the agent of Parker and by him communicated to Parker upon which he acted was, in legal contemplation, a false representation made to Parker himself. It was designed to influence him, and whether communicated to him directly, or through the intervention of an agent, can make no difference. It was intended to reach and operate upon his mind. It did reach it and produced the desired effect upon it, viz. the payment of the money. And it is immaterial whether it passed through a direct or circuitous channel. So the payment by the agent of Parker, according to Parker's orders, out of his money in the hands of the agent, was legally a payment by Parker of his own money, according to the allegation in the indictment.

On the whole, we think that all the exceptions must be over ruled, and judgment rendered on the verdict.